IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JORGE NELSON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DONALD T. VAUGHN, et al. | : | NO. 02-4776 |

## REPORT AND RECOMMENDATION

CAROL SANDRA MOORE WELLS                                                                July 30, 2003
UNITED STATES MAGISTRATE JUDGE

      Presently before this court is a Petition for Writ of Habeas Corpus filed, *pro se*, pursuant to 28 U.S.C. § 2254. Jorge Nelson ("Petitioner") currently is incarcerated at the State Correctional Institution at Graterford, Pennsylvania. Petitioner seeks habeas relief claiming 1a) ineffective assistance of trial counsel for failing to object to expert's reference labeling the killing as "execution type," 1b) conviction based on insufficient evidence, 2a) ineffective assistance of trial counsel for failure to object to testimony regarding Petitioner's post-arrest "silence," 2b) denial of his Fifth Amendment rights, 3) trial counsel was ineffective for failing to interview and call Michael Collier as a defense witness, and 4) interference with his right to testify on his own behalf. The Honorable Norma L. Shapiro referred this matter to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1). For reasons that follow, it is recommended that Petitioner's habeas petition be denied and dismissed without an evidentiary hearing.

### I. BACKGROUND AND PROCEDURAL HISTORY[1]

      On November 9, 1992, Petitioner and his co-conspirator, William Birdsong, entered the

---

[1] The facts in this background and procedural history were obtained from Petitioner's Petition for Writ of Habeas Corpus, the Petitioner's Memorandum of Facts and Law in Support of Application for Writ of Habeas Corpus, the Commonwealth's Response to Petition for Writ of Habeas Corpus inclusive of all exhibits, and the record of the Court of Common Pleas of Philadelphia, Pennsylvania.

apartment of Nathaniel Boone, Stefan Purcell and Donald Latimer, located at 6153 Old York Road in Philadelphia, to pick up some bags of cocaine left there by Latimer's brother. N.T. 7/6/89, at 3, 7-11. Inside the apartment Petitioner pulled a sawed-off twelve gauge shotgun from under his coat while Birdsong brandished a .25 caliber automatic handgun. *Id.* at 16. The two gunman ordered the occupants into the living room where Birdsong questioned Boone as to where the drugs were located. *Id.* at 24. Birdsong forced Latimer to lie on the floor and then placed a sofa cushion over his head. *Id.* at 20. When the back doorbell rang, Birdsong ran downstairs to investigate, leaving Petitioner to guard over the victims. *Id.* Latimer saw Purcell move toward Petitioner who responded by firing a fatal shot to Purcell's chest. *Id.* at 21. Birdsong heard the gun fire, ran back to the living room, fired two shots that struck Purcell in the mouth and back and put a single bullet into the side of Boone's head. *Id*. at 20-24. Birdsong also fired his handgun into the cushion covering Latimer's head, however, the bullet missed Latimer who feigned death. *Id*. at 22. Birdsong and Petitioner took jewelry and money from their victims and left the house. *Id.* at 24. Latimer immediately identified Birdsong, whom he knew previously. He later identified Petitioner in a photographic array based on the fifteen minutes he had to observe Petitioner in a lighted room during the incident. *Id*. at 30, 115, 124-26. Birdsong evaded capture for over a year, while Petitioner remained at large more than five years before he was apprehended. *Id*. at 80-82, 844-91, 94-99, 103- 107. Upon his captured, Petitioner identified himself as George Dixon. *Id.*

On July 11, 1989, the Honorable John J. Poserina, Jr. in the Common Pleas Court of Philadelphia, convicted Petitioner of two counts each of second-degree murder (felony murder),[2]

---

[2] 18 Pa. C.S.A. §§ 2501-2502.

first-degree robbery,[3] burglary,[4] conspiracy[5] and possession of an instrument of crime.[6]  *See* Petitioner's Memo ("Pet.") at 3.  After Petitioner filed post-verdict motions *pro se*, his trial counsel, Dennis Eisman, Esquire was permitted to withdraw.[7]  *See id.*  New court-appointed counsel, Mitchell Scott Strutin, Esquire, filed additional post-trial motions late in 1990.  *See* Respondent's Brief ("Resp.") at 4.  After an evidentiary hearing, Judge Poserina denied all post-verdict motions.  *See* Resp. At 4.  On December 11, 1990, Petitioner was sentenced to two terms of life imprisonment and a consecutive sentence of five to ten years for conspiring to kill two men.  *See* Resp. at 4.

On January 17, 1991, Petitioner appealed to the Superior Court of Pennsylvania alleging that:

1. Trial counsel rendered ineffective assistance of counsel when he failed to object to the opinion rendered by Assistant Medical Examiner Paul Hoyer that the killing of Nathaniel Boone was of an 'execution type.'

2. Trial counsel rendered ineffective assistance of counsel when he failed to object to testimony presented by the Commonwealth which constituted evidence of the defendant's silence at the time of his arrest and failed to request a cautionary instruction regarding this testimony.  The Commonwealth elicited testimony from Detective Michael Cohen that the defendant, at the time of his arrest, failed to acknowledge the fact that he was Jorge Nelson and not George Dixson.

3. Trial counsel rendered ineffective assistance of counsel when he failed to present the testimony of Michael Collier on behalf of the defendant at trial.  Had Collier been called a[s] a witness at trial, he would have testified that three men were seen leaving the premises 6153 Old York Road, two black men and one white man.  Collier's

---

[3] 18 Pa. C.S.A. § 3701.

[4] 18 Pa. C.S.A. § 3502.

[5] 18 Pa. C.S.A. § 903.

[6] 18 Pa. C.S.A. § 807.

[7] On April 23, 1991, Defendant's trial counsel, Dennis Eisman committed suicide on the eve of being indicted in connection with a drug ring.  *See* Pet. at 3.

eyewitness testimony was relevant and may have exculpated the defendant.

*See Commonwealth v. Nelson*, Nos. 2181-2190 (Ct. Com. Pl. Crim. Trial Div. Jan 17, 1991)(Statement of Matters Complained of on Appeal). On September 3, 1991, the Superior Court affirmed the judgment of sentence. *See Commonwealth v. Nelson*, 601 A.2d 372 (Pa. Super. 1991)(table). On April 14, 1992, the Supreme Court declined review of the identical three claims. *See Commonwealth v. Nelson*, 607 A.2d 252 (1992); Resp. at Exh. "A."

On January 15, 1997, Petitioner filed a counseled petition for collateral relief pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546; he, again, alleged identical ineffective assistance of counsel claims. *See Commonwealth v. Nelson*, No 2181 (Ct. Com. Pl. Crim. Trial Div. Pa. Cty.)(Petition for Relief under the Post-Conviction Relief Act). On September 29, 1997, the PCRA court dismissed the petition. *See Commonwealth v. Nelson*, Nos. 2182-83, 2185-88, 2190 (Ct. Com. Pl. Crim. Trial Div. 9/29/97)(order).

Petitioner, in the Superior Court of Pennsylvania, asserted new claims that trial counsel was ineffective in 1) failing to object to the introduction of hearsay testimony that identified Petitioner as one of the shooters and provided a motive for the crime; 2) interfering with Petitioner's right to testify in his own defense; and 3) failing to impeach the credibility of the Commonwealth's sole eyewitness, who offered inconsistent statements during preliminary examination and motion to suppress hearings. *See* Resp. at Exh. "C." On November 9, 1999, the Superior Court remanded the case for an evidentiary hearing confined to the issue of Mr. Nelson's right to testify. *See Commonwealth v. Nelson*, No. 4490 (Pa. Super. 1999)(Appeal from the PCRA Order). On July 19, 2000, at the conclusion of an evidentiary hearing, the PCRA court found Petitioner's decision not to testify to be knowing, intelligent and voluntary. *See Commonwealth v. Nelson*, No. 3496 at 3 (Pa.

Super. 2002). Accordingly, neither trial nor appellate counsel had been ineffective. *See id.*

On December 13, 2000, Petitioner appealed the decision of the PCRA court alleging: 1) the PCRA court's findings of fact and conclusions law as to the ineffective assistance of trial counsel claim were clearly erroneous; and 2) the PCRA court had erred in finding his appellate ineffective assistance of counsel issue to have been waived. *See Nelson*, No. 3496 (Pa. Super. 2002). On January 22, 2002, the Superior Court upheld the PCRA court's decision and denied Petitioner's first issue on the merits, thus rendering the second issue moot. *Id.* On August 1, 2002, the Pennsylvania Supreme Court declined review of Petitioner's timely petition for allowance of appeal. *See Commonwealth v. Nelson*, No. 81 (Pa. 2002); *see also* Resp. at Exh. "D."

On July 18, 2002, Petitioner filed, *pro se*, the instant Petition for Writ of Habeas Corpus. He asserts, *inter alia*, that: (1)(a) trial counsel was ineffective for failing to object to expert opinion testimony that one of the killings had been "execution type"; (1)(b) expert opinion testimony was insufficient to establish malice beyond a reasonable doubt; (2)(a) trial counsel was ineffective for failing to object to testimony regarding his post-arrest "silence;" (2)(b) his Fifth Amendment right to remain silent was violated when police officers testified that Petitioner had used an alias when he was arrested; (3) trial counsel was ineffective for failing to interview and call Michael Collier as a defense witness; and (4) the trial court and trial counsel abridged his right to testify. *See* Pet. at 9-10.

## II. DISCUSSION

A.  <u>Exhaustion/Procedural Default</u>

A petition for habeas corpus is a final effort to obtain relief when other legal remedies are foreclosed. Therefore, a district court may consider and grant habeas corpus relief only if Petitioner meets his burden of proving that he has either exhausted all state remedies available to him with

5

respect to each discrete allegation or is excused from doing so. 28 U.S.C. § 2254(b);[8] *see Rose v. Lundy,* 455 U.S. 509, 519 (1982); *Toulson v. Beyer,* 987 F.2d 984, 987 (3d Cir. 1993), *aff'd.* 30 F.3d 1488 (3d Cir. 1994) (citations omitted). A claim is exhausted if it has been "fairly presented" once to the state's trial court, intermediate appellate court, and highest court. 28 U.S.C. § 2254(b); *Evans v. Court of Common Pleas, Delaware County, Pennsylvania,* 959 F.2d 1227, 1230-31 (3d Cir. 1992) (*citing Picard v. Connor*, 404 U.S. 270, 275 (1971)). The fair presentation requirement is met when the claim presented in the state court is the "substantial equivalent" of the claim asserted in the petitioner's federal habeas petition. *See Picard*, 404 U.S. at 278. *See Lesko v. Owens*, 881 F.2d 44, 50 (3d Cir. 1989) (*citing Picard*), *cert. denied* 110 S.Ct. 759 (1990); *Bisaccia v. Atty. Gen. of N.J.*, 623 F.2d 307, 310 (3d Cir. 1980) (*quoting Picard*), *cert. denied* 101 S.Ct. 622 (1980).

When an issue is unexhausted and further direct or collateral review in state court is foreclosed,[9] the claim is deemed procedurally defaulted for purposes of federal review. *See Coleman*

---

[8] The exhaustion requirements of 28 U.S.C. § 2254 provide:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State Court shall not be granted unless it appears that
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> > (B)(i) there is an absence of available State corrective process; or
> > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant . . .
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedures, the question presented.

[9] Collateral attack pursuant to the Pennsylvania Collateral Relief Act ("PCRA"), 42 Pa.C.S. § 9541, *et seq.* requires that 1) a claim has not been previously litigated or waived *and* 2) the previous failure to raise the issue was not the result of any rational, strategic or tactical decision by counsel. 42 Pa.C.S. § 9543(a)(3)-(4). An issue is previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue" or "it has been raised and decided in a proceeding collaterally attacking conviction or sentence." 42 Pa.C.S. § 9544(a)(2)-(3). An issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post conviction proceeding. 42 Pa.C.S. § 9544(b).

*v. Thompson*, 501 U.S. 722, 735n.1 (1991); 28 U.S.C. § 2254(b)(1)(A); 42 Pa.C.S. § 9544(a)-(c). This court will dismiss a procedurally defaulted claim unless Petitioner demonstrates both "cause" for the default *and* "actual prejudice" as a result of the alleged violation of federal law," or that the court's failure to consider the claims will result in a "fundamental miscarriage of justice."

"Cause" sufficient to excuse procedural default requires a showing that some objective factor, outside of counsel or Petitioner's control, prevented compliance with state procedural rules. *See Murray v. Carrier,* 477 U.S. 478, 488 (1986); *Caswell*, 953 F.2d at 862. "Actual prejudice" occurred if an error caused Petitioner "actual and substantial disadvantage." *See U.S. v. Frady*, 456 U.S. 152, 170 (1972). The burden of proof falls on Petitioner to establish both cause for the default and prejudice resulting therefrom. *See Teague v. Lane*, 489 U.S. 288, 298 (1989); *Coleman*, 501 U.S. at 754; *Caswell*, 953 F.2d at 962. Fundamental injustice has been defined to encompass instances in which newly discovered evidence makes it "more likely than not" that a reasonable juror would find a petitioner not guilty. *See Coleman*, 501 U.S. at 750; *Schlup v. Delo*, 513 U.S. 298 (1995); *see also Caswell*, 953 F.2d at 857.

B.  <u>Procedurally Defaulted Claims - Grounds 1(b) and 2(b)</u>

Petitioner has included in his petition two unexhausted claims, that: 1) the prosecution failed to establish malice beyond a reasonable doubt (ground 1(b)) and his Fifth Amendment right to silence was violated when the jury was told that he did not respond to his true name during police interrogation (ground 2(b)). These claims are defaulted and precluded from habeas review, because Petitioner never properly raised them in state court. Moreover, Petitioner cannot return now to state court to remediate the default. Under the PCRA, Petitioner had only one year after judgment became final to file any PCRA petition. *See* 42 Pa.C.S. § 9545(b)(1). This statute of limitations, consistently

applied since its effective date, creates a jurisdictional bar to Petitioner's successful institution of proceedings concerning his claim in state court. *See Commonwealth v. Peterkin,* 422 A.2d 638 (Pa.1998); *Commonwealth v. Banks,* 726 A.2d 374, 375-76 (pa. 1999). As Petitioner's conviction became final before the effective date of the PCRA amendment, he had until January 17, 1997 to raise this claim. *See* 42 Pa.C.S. § 9545(b)(1). Consequently, a second PCRA petition would be time-barred as a matter of jurisdiction. *See Keller v. Larkins,* 251 F.3d 408, 415 (3d Cir. 2001).

Notwithstanding this impediment to PCRA review, relief nevertheless, could be available if Petitioner were able to satisfy one of three narrow exceptions enumerated under 42 Pa.C.S. § 9545(b)(1).[10] However, Petitioner neither claims recent discovery of relevant facts, nor suggests that a recently pronounced state or federal supreme court law applies retroactively to give him new rights. Moreover, he has not alleged that any government officials interfered with his presentation of this claim.

Finally, Petitioner cannot meet the state court substantive standard for filing a second PCRA petition. Pennsylvania Supreme Court has held that to maintain a second PCRA petition, a claimant must make "a strong prima facie showing . . . [of] a miscarriage of justice . . . which no civilized

---

[10] 42 Pa.C.S. § 9545(b) provides:

> (b) Time for filing petition.
> (1) Any petition under this subchapter . . . shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that
> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

society can tolerate." *Commonwealth v. Lawson*, 549 A.2d 107, 112 (Pa. 1988). Plaintiff assertions herein do not arise to that level. Thus, his claims shall remain defaulted.

Federal courts, in appropriate circumstances, excuse procedural defaults, however, Petitioner has neither alleged nor demonstrated facts sufficient to show cause to excuse his omission. Specifically, he has not adduced any evidence of objective factors, external to the defense, that prevented him from presenting these claims upon collateral review. *See Caswell,* 953 F.2d at 862. As Petitioner fails to establish cause for the default, inquiry into the prejudice prong is unnecessary. He cannot demonstrate actual innocence, either, such that no "fundamental miscarriage of justice" warrants habeas review or relief. *See Schlup*, 513 U.S. at 298. Accordingly, Petitioner's defaulted first claim should be dismissed.

C.    Exhausted Claims - Grounds 1(a), 2(a), 3 and 4

Plaintiff asserts that: 1) trial counsel was ineffective for failing to object to expert opinion testimony that one of the killings had been "execution type" (ground 1(a)); 2) trial counsel was ineffective for failing to object to testimony regarding his post-arrest "silence" (ground 2(a)); 3) trial counsel was ineffective for failing to interview and call Michael Collier as a defense witness (ground 3); and 4) the trial court and trial counsel abridged his right to testify (ground 4). These grounds are fully exhausted and will be reviewed.

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court may overturn a state court's resolution of the merits of a constitutional issue only if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court of the United States, in *Williams v. Taylor*, 529 U.S. 362 (2000),

9

discussed the analysis required by § 2254(d)(1):

> [Under the "contrary to" clause] a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* at 1498. The Third Circuit Court, consistent with the *Williams v. Taylor* interpretation, has set forth in *Marino v. Superintendent, SCI-Albion*, 171 F.3d 877 (3rd Cir. 1999), *cert. denied* 528 U.S. 824 (1999) a two tier approach to determining § 2254(d)(1) issues:

> First, the federal habeas court must determine whether the state court decision was "contrary to" Supreme Court precedent that governs the petitioner's claim. Relief is appropriate only if the petitioner shows that "Supreme Court precedent requires an outcome contrary to that reached by the relevant state court." *O'Brien* [*v. Dubois*], 145 F.3d [16], 24-25 [(1st Cir. 1998]. In the absence of such a showing, the federal habeas court must ask whether the state court decision represents an "unreasonable application" of Supreme Court precedent; that is, whether the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified. If so, then the petition should be granted.

*Id* at 891. The phrase "clearly established Federal law," as the term is used in Section 2254(d)(1), is restricted "to holdings, as opposed to the dicta of [the United States Supreme Court] decisions as of the time the relevant state-court decision." *Williams*, 529 U.S. at 365. Under the "reasonable application" clause,

> a federal habeas court may not grant relief simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.*

The AEDPA further provides for relief if an adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d)(2). State factual determinations, presumptively correct, may be rebutted only upon presentation of clear and convincing evidence. 28 U.S.C. § 2254(c)(1).

D.   Ineffective Assistance of Counsel Claims

   1. *Strickland* Standard

Petitioner contends that trial counsel was ineffective. To prevail on these claims, Petitioner must meet the two-pronged federal constitutional standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Hess v. Mazurkiewicz*, 135 F.3d 905 (3d Cir. 1998).

First, Petitioner must demonstrate that counsel's performance was so deficient as to fall below an objective standard of "reasonableness under prevailing professional norms." *Id*. at 668. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel" granted petitioner by the Sixth Amendment. In assessing an attorney's performance, every effort must be made to "eliminate the distorting effects of hindsight," reconstruct the circumstances of counsel's conduct and evaluate the conduct from counsel's perspective at the time. *Id*. at 689. Furthermore, the court must indulge a strong presumption that the attorney's conduct fell within the wide range of reasonable professional assistance. *See id.* In other words, Petitioner must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *Id.* (citing *Michel v. La.*, 350 U.S. 91, 101 (1955)).

After having adequately established that counsel's performance was constitutionally deficient, Petitioner must further show that the deficient representation prejudiced the defense. This requires proof that "counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose

11

result is reliable." *Strickland*, 466 U.S. at 687; *Kramm v. U.S.*, WL 705962 at *4 (E.D.Pa. Dec. 2, 1996). With respect to prejudice, Petitioner must demonstrate a "reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Strickland*, 499 U.S. at 695. A reasonable doubt is a probability sufficient to undermine confidence in the outcome, but is less than a preponderance of the evidence. *See id.* at 693. If Petitioner fails to satisfy either prong of *Strickland,* the claim necessarily fails and inquiry into the remaining prong is unnecessary. *See id.* at 697.

2. Failure to Object to Expert's Reference to One of the Killings as "Execution-Type" Claim

Petitioner asserts that trial counsel should have objected to the Assistant Medical Examiner, Dr. Paul Hoyer's testimony that characterized the shooting as "an execution type killing." *See* Pet. at 13. Petitioner's argues that this characterization "invade[d] the exclusive function of the jury to determine the ultimate issue of petitioner's intent." The Superior Court addressed trial counsel's decision not to object to this statement as follows:

> [i]t was a reasonable exercise of judgment to allow the characterization and then attempt to discredit the entire testimony by attacking the basis for the opinion. Thus, trial counsel had a reasonable basis [for] failing to object.

*Commonwealth v. Nelson*, No. 3482 at 3 (Pa. Super. Ct. 1991). Assuming *ad arguendo* this judgement of counsel to have been deficient, it nevertheless, did not prejudice Petitioner.

Petitioner was charged with second-degree felony-murder (murder during the course of an armed robbery), not first-degree specific-intent murder. Thus, the verdict would have remained constant whether the jury believed the killing was of the "execution type" or not. In dismissing Petitioner's claim, the trial court noted that "[a] bullet hole behind the ear speaks for itself" and does not require expert medical testimony. *See Commonwealth v. Nelson,* No. 2181-2190 at 3-5 (Ct. Com.

Pl. Phi. Cty. Sept. 3, 1991). Adequate intent to convict Petitioner of second-degree murder thus existed. The trial court further noted:

> This opinion would have been significantly different if the verdict had been murder in the 1st degree. In the context of this case, Dr. Hoyer's expression 'execution type' was harmless since it did not affect the verdict.

*See id.* at 5. Thus, neither prong of *Strickland* can be met and the Trial Court's determination that counsel was effective is neither contrary to nor an unreasonable application of clearly established federal law.

      3. Failure to Object to Testimony Regarding Petitioner's Post-Arrest "Silence" Claim

Petitioner contends that counsel was ineffective for failing to object to testimony from police officers regarding his post-arrest "silence." Petitioner used an alias when police initially asked his name as he stood in his doorway at the time of arrest. *See* Pet at 19. Again, in applying *Strickland*, Petitioner must demonstrate that counsel's performance was deficient and unsound trial strategy. He cannot meet this burden.

Trial counsel did not interpret the detective's testimony on non-acknowledgment of his name as implicating Petitioner's privilege against self-incrimination, but, rather, as a means to establish Petitioner's flight and concealment of his identity as evidence of consciousness of guilt. Since counsel considered evidence of such a mindset to be proper, he did not object. (N.T. 12/11/90, at 9). Pennsylvania law affords the Commonwealth "an inference regarding the appellant's consciousness of guilt through the use of an alias upon arrest." *See Commonwealth v. Lewis*, 567 A.2d 1376, 1380 (Pa. 1989)(citations omitted). This state standard comports with federal law. *See U.S. v. Levy*, 865 F.2d 551, 558 (3rd Cir. 1989)("[T]he defendants' attempts to conceal their true identities by providing aliases to the police upon arrest is relevant as consciousness of guilt."). Thus, the detective appropriately

testified as to facts permitting inferences of guilt and counsel's conduct was appropriate. This court, therefore, finds that the Pennsylvania Superior Court's determination that counsel was effective is neither contrary to nor an unreasonable application of clearly established federal law.

    4. Failure to Interview and Call Michael Collier as a Defense Witness Claim

Petitioner contends that trial counsel should have interviewed and called Michael Collier ("Collier") as an exculpatory witness at trial. For omission of a witness to constitute ineffective assistance, Pennsylvania law requires Petitioner to establish that 1) the witness existed, 2) the witness was available to testify at trial, 3) that counsel was informed of or should have known of the existence of the witness, 4) that the witness was prepared to cooperate and willing to testify favorably to Petitioner at trial; 5) that the absence of the testimony prejudiced the appellate so as to deny him a fair trial. *See Commonwealth v. Griffin*, 515 A.2d 1382, 1387-1388 (1986); *Commonwealth v. Ross*, 416 A.2d 1092, 1094 (1979). This state standard is consistent with federal law. *See Williams v. Taylor*, 529 U.S. 362, 394-395 (2000). *See also U.S. ex rel. Green v. Rundle*, 343 F.2d 1112, 1115 (3rd Cir. 1970)("[w]hen a habeas corpus petitioner alleges as a ground for relief the failure of counsel to exercise normal competence in presenting specific trial evidence it is reasonable, we think, to put on petitioner the burden of showing that the missing evidence would be helpful."). Petitioner has not met this burden.

Collier was interviewed by the police following the shooting incident. *See* Resp. at Exh. "A." Trial counsel had access to the notes of this interview prior to trial. *See Id.* Collier reported that, as he attempted to gain access to 6153 Old York Road, he heard scuffling and muffled gunshots from the victim's apartment. Collier then saw two black males and one white male leave the building. Trial counsel elected not to call Collier as a defense witness, explaining:

14

> Michael Collier allegedly saw people leaving the area at the time of the incident. I reviewed the statements [he gave to the police] and felt that not only would it not really assist in my client's defense, but it would have verified certain aspects of Mr. Latimer's testimony . . . I felt, in my judgment, it would not have been in my client's interest to call this individual. He had a bad record, and it might have looked like he was giving false testimony to favor my client which would have backfired.

(N.T. 7/10/89, at 3-4.) Counsel, thus, articulated a valid reason for not calling Collier. Under *Strickland*, a reasonable decision of trial counsel will not trigger habeas relief. As this court has previously noted:

> The decisions of which witnesses to call to testify are strategic and therefore left to counsel. *See* ABA Standards of Criminal Justice, Standard 4- 5.2; *Diggs v. Owens*, 833 F.2d 439, 466 (3rd Cir. 1987), *cert Denied*, 485 U.S. 979 (1988). Attorneys are not required to call every eye witness suggested to them; their expertise leads them to choose only the witnesses likely to assist the case. [*U.S.*] *v. Balzano*, 916f.2d 1273, 1294 (7th Cir. 1990).

*U.S. v. Ciancaglini*, 945 F.Supp. 813, 823 (E.D.Pa 1996).

Moreover, Petitioner cannot establish prejudice under *Strickland*. The Superior Court appropriately rejected claims of prejudice as follows:

> Trial counsel read the transcript of Collier's testimony at co-defendant Birdsong's trial. Nelson has not described any fact which trial counsel could have obtained by interviewing Collier which he did not know from reading the transcript. The failure to conduct more intensive investigation is not ineffectiveness without a showing of what further information such an investigation would have developed. Furthermore, assuming that such an interview would have developed additional facts beyond those available from the Birdsong transcript, trial counsel still made a reasonable decision not to present Collier's testimony in light of the extensive impeachment which occurred at the prior Birdsong trial.

*Commonwealth v. Nelson*, No. 3482 (Pa. Super. Ct. 1991). Thus, although Petitioner has established the first three requirements of the *Griffin* test, he has not convinced this court that Collier's testimony

ultimately would have resulted in testimony favorable to him or that counsel's failure to utilize Collier denied him as to deny him a fair trial. Accordingly, the Superior Court of Pennsylvania correctly denied relief on this claim. *See id.*

Inasmuch as trial counsel acted reasonably and that a different result would not have occurred had Collier testified at trial, this court, finds that the Pennsylvania Superior Court's determination that counsel was not in-effective is neither contrary to nor an unreasonable application of clearly established federal law.

5. Interference with Petitioner's Right to Testify Claim

Finally, Petitioner contends that trial counsel was ineffective for failing to allow him to testify on his own behalf at trial. Petitioner failed to raise this issue on direct appeal and, therefore, asserts it as a claim that appellate counsel was ineffective for failing to include this claim in his PCRA petition.

This layered ineffective assistance of counsel claim fails for two reasons. First, there is no constitutional right to effective assistance of appeal counsel after direct appeal. Second, on July 10, 1989, during a pre-closing discussion, the trial court asked Petitioner if he wished to take the stand. N.T. 7/10/89, at 11. Petitioner did not answer the question and allowed the discussion to continue on other issues. *See Id.* The Superior Court noting that Petitioner was, thus, denied the opportunity to respond to the trial court's question, remanded this issue for an evidentiary hearing to determine if "Petitioner was advised of his right to testify, and if he was advised, why he did not pursue such an opportunity." *Commonwealth v. Nelson*, No. 4490 (Pa. Super. Ct. 1999).

At a hearing on July 19, 2000, direct appellate counsel and Petitioner testified. Petitioner gave conflicting statements as to what he would have said had he testified. Initially, Petitioner stated that he had informed trial counsel of an alibi (that he was in Florida or Georgia). (N.T. 7/19/00, at 39.)

16

Later Petitioner admitted that he had not informed trial counsel of his alibi. *Id.* at 45. Petitioner's post-trial and appellate attorney, Mr. Strutin, testified that Petitioner never related to him that trial counsel had deprived him of his right to testify. *Id.* at 54-56. Furthermore, Strutin would not have raised the issue on appeal, because he did not believe it to be viable. *See id.*

The PCRA court identified Petitioner's nonflattering prior criminal record as the main reason trial counsel did not call Petitioner to testify. *Commonwealth v. Nelson*, No. 2181 (Ct. Com. Pl. Phi. Cty. 2000). Furthermore, the PCRA court gave sound reasons why no prejudice resulted from trial counsel's failure to put Petitioner on the stand:

> The claim that trial counsel was ineffective for not calling defendant as a witness on his own behalf also fails him PCRA relief because defendant cannot possibly show that he was prejudiced by trial counsel's supposedly ineffective conduct. Such a showing of prejudice requires that defendant prove that, *but for the challenged conduct of the counsel,* the outcome of the trial would have been different. *See e.g. Commonwealth v. Travaglia*, 541, Pa. 108, 661 A.2d 352, 356-357 (1995), *reargument denied, cert. denied*, 516 U.S. 1121, 116 S.Ct. 931 (1996). It is the PCRA petitioner who bears the burden of proving that he was prejudiced in this manner. *Id.* The record from the PCRA hearing plainly shows that defendant did not make this required showing of prejudice. Indeed, even if his trial attorney had lacked a reasonable basis for not calling defendant to the stand - a showing that defendant did not make on this record - any possible prejudice resulting from counsel's failure to do so was cured when the trial Judge specifically offered defendant the chance to testify on his own behalf. Defendant did not accept that offer. Accordingly, the absence of the defendant's testimony from the trial here did not result from any fault on the part of trial counsel, but instead, resulted solely from the defendant's own decision not to accept the court's offer to permit him to testify on his own behalf. For this reason, defendant cannot possibly show that any possible error on the part of trial counsel adversely affected the outcome of this case.

*See id.* at 7-8. Petitioner has proved neither that his trial counsel's decision to not have him testify at trial was unreasonable, nor that this decision prejudiced the result at trial. Therefore, this court finds

that the state court's determination that counsel was effective neither contravenes nor is an unreasonable application of clearly established federal law. Accordingly, this court makes the following:

## **RECOMMENDATION**

AND NOW, this 30th day of July 2003, for the reasons contained in the preceding report, it is hereby RECOMMENDED that the Petition for Writ of Habeas Corpus pursuant to U.S.C. § 2254 be DENIED and without an evidentiary hearing. Petitioner has not demonstrated a substantial violation of any constitutional right; therefore, there is no probable cause to issue a certificate of appealability.

_____
CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE